BYE, Circuit Judge,
dissenting.
The majority concludes that the plaintiff-beneficiaries failed to demonstrate circumstances sufficient to trigger a less deferential standard of review. I disagree. The Company decided to deny benefits based on the opinion of an expert hired after litigation commenced, and at the suggestion of defense counsel. Under these circumstances, I believe that we should apply a less deferential standard of review. Giving less deference to the conflicted decision to deny benefits, I would remand. The Company should be required to obtain a truly independent, outside medical opinion about Robert Jackson’s sanity before making a benefits determination.
The procurement of independent medical review is a key factor in deciding whether we should apply a less deferential standard of review in cases where the insurer is also the ERISA plan administrator (i.e., conflicted administrator). Compare Woo v. Deluxe Corp., 144 F.3d 1157, 1161-62 (8th Cir.1998) (applying the sliding scale standard of review where conflicted administrator did not obtain independent medical review) with Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 586 (8th Cir.1999) (refusing to apply the sliding scale approach where conflicted administrator had both a physical therapist and physician perform independent evaluations of claimant), and Schatz v. Mut. of *682 Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir.2000) (refusing to apply the sliding scale approach where conflicted administrator had an orthopedic specialist perform an independent medical examination of claimant).
The Company’s initial decision to deny benefits was based solely on an in-house review of Jackson’s medical records.[1] The Company’s ultimate decision was based entirely on Dr. Harry’s opinion. Dr. Harry was hired only after the beneficiaries initiated litigation in an attempt to obtain benefits. The Company admits it hired Dr. Harry at the suggestion of defense counsel. The Company acknowledges that it could have requested Unival, an outside medical consultant group, to review the file and give an independent opinion about Jackson’s sanity, but the Company declined to do so.
In my view, the majority opinion sets a dangerous precedent. When a conflicted administrator finds itself in litigation after initially denying an award of benefits, it may realize that it failed to use proper judgment or thoroughly investigate the claim. In that situation, the majority’s decision allows the conflicted administrator to resort to the testimony of an adversarial litigation expert to justify the earlier benefits denial. We don’t normally permit fiduciaries to act like this. In the adversarial context, it would be naive to believe that a conflicted administrator won’t, inevitably, find a litigation expert to provide the scant evidence required to support a denial. Cf. Schatz, 220 F.3d at 949 (discussing the deferential standard of review).
I would require “substantial evidence bordering on a preponderance to uphold [the Company’s] decision.” Woo, 144 F.3d at 1162. Under that less deferential standard, I find this record insufficient to support the Company’s denial. First, Dr. Logan opined that Jackson was insane at the time of his suicide, and I find that opinion sound. Second, I find it significant that Dr. Harry voiced no criticism of Dr. Logan’s conclusions, despite Dr. Harry’s adversarial role. Finally, the manner in which Dr. Harry chose to state his ultimate conclusion raises a red flag. Dr. Harry merely listed several factors indicating insanity, followed by a longer list of factors indicating sanity. Dr. Harry then concluded that, “on balance,” Jackson wasn’t deranged or insane at the time of his death. I question the legitimacy of what appears to be a purely quantitative approach to what is undisputedly a qualitative medical issue.
Under ERISA, a plan administrator must discharge its fiduciary “duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.” 29 U.S.C. § 1104(a)(1) (emphasis added) (internal punctuation omitted). I realize we normally view the decisions of ERISA plan administrators with a great deal of deference. But when the plan administrator doubles as the insurer, and denies benefits, we must be careful not to render § 1104(a)(l)’s directive nugatory. For this reason, as well as those expressed above, I would remand this case and require the Company to obtain and consider a truly independent medical opinion before making a decision about benefits.

. The Company initially denied the claim because Jackson’s medical records revealed no treatment for mental health problems. Dr. Logan later opined that the lack of treatment for Jackson's obsessive/compulsive disorder, avoidant personality disorder, and depression was what most likely precipitated the suicide.